UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PUGET SOUNDKEEPER ALLIANCE,

Plaintiff,

v.

TOTAL TERMINALS INTERNATIONAL, LLC, *et al.*,

Defendants.

NO. C18-0540RSL

ORDER DENYING PORT OF SEATTLE'S MOTION TO DISMISS

This matter comes before the Court on the "Port of Seattle's Motion to Dismiss for Lack of Jurisdiction." Dkt. # 31. Plaintiff sued the Port of Seattle and its tenant under the citizen suit provisions of the Clean Water Act ("CWA") for on-going stormwater discharges from a marine cargo terminal that allegedly exceed the limits imposed by the Industrial Stormwater General Permit ("ISGP") that covers the facility. The Port seeks dismissal of the claims against it for lack of subject matter jurisdiction. Having reviewed the submissions of the parties,[1] the Court finds as follows:

//

---

[1] This matter can be decided on the papers submitted. The Port's request for oral argument is DENIED.

ORDER DENYING PORT OF SEATTLE'S
MOTION TO DISMISS - 1

**A. Lack of Jurisdiction, Fed. R. Civ. P. 12(b)(1)**

The Port argues that the Court lacks jurisdiction over the claims against it because (1) only a permittee can be held liable for violations of a discharge permit and (2) plaintiff failed to comply with the 60-day notice requirement imposed by the CWA. The first argument goes to the sufficiency of the factual allegations of the complaint and the viability of the claims asserted: it is more appropriately analyzed under Rule 12(b)(6). Notice, however, is a pre-requisite to bringing a citizens suit under the CWA, and the failure to provide timely notice deprives the federal courts of jurisdiction to hear the suit. See, e.g., Ctr. For Biological Diversity v. Marina Point Dev. Co., 566 F.3d 794, 800 (9th Cir. 2009) (describing notice as "a jurisdictional necessity"). Because jurisdiction is a threshold matter, it should be considered before addressing the merits of plaintiff's claims. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-96 (1998). When evaluating its jurisdiction, the Court may consider facts outside of the four-corners of the complaint to assure itself that it does, in fact, have the power to hear this matter. Americopters, LCC v. Fed. Aviation Admin., 441 F.3d 726, 732 n.4 (9th Cir. 2006). The Court has, therefore, considered plaintiff's August 9, 2018, notice to the Port of its intent to bring a citizen suit under the CWA. Dkt. # 25 at 66-80.

Actions can be brought by private persons to enforce provisions of the CWA only if the defendant and the government are given 60 days' notice of intent to sue. 33 U.S.C. § 1365(a) and (b)(1)(A).

> [T]he legislative history indicates an intent to strike a balance between encouraging citizen enforcement of environmental regulations and avoiding burdening the federal courts with excessive numbers of citizen suits. Requiring citizens to comply with the notice and delay requirements serves this congressional goal in two ways. First, notice allows Government agencies to take responsibility

for enforcing environmental regulations, thus obviating the need for citizen suits....
Second, notice gives the alleged violator "an opportunity to bring itself into
complete compliance with the Act and thus likewise render unnecessary a citizen
suit." This policy would be frustrated if citizens could immediately bring suit
without involving federal or state enforcement agencies. Giving full effect to the
words of the statute preserves the compromise struck by Congress.

Hallstrom v. Tillamook County, 493 U.S. 20, 29 (1989) (citations omitted). Federal regulations require that the notice "include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice." 40 C.F.R. § 135.3. "[T]he notice is not just an annoying piece of paper intended as a stumbling block for people who want to sue; it is purposive in nature and the purpose is to accomplish corrections where needed without the necessity of a citizen action." Marina Point Dev., 566 F.3d at 800.

The Port asserts that the notice it received in August 2018 was defective because it failed to tell the Port "what it allegedly did wrong, and when." Dkt. # 35 at 13 (quoting Marina Point Dev., 566 F.3d at 801). To the contrary, the fifteen-page notice letter, which includes a table of excess discharges of turbidity, copper, and zinc at specific monitoring points during most quarters from 2012 to 2018, specifies both the what and when of the alleged discharges as well as plaintiff's theory regarding the Port's responsibility for those discharges.[2] To the extent the

---

[2] Plaintiff specifically asserts that:

The Port is the landlord of the facility. The Port has the responsibility, power, and capacity to make timely discovery of discharges of polluted stormwater from this facility,

ORDER DENYING PORT OF SEATTLE'S
MOTION TO DISMISS - 3

Port believes the theory of liability is not viable, that issue will be analyzed below under Rule 12(b)(6). The notice itself is more than sufficient to inform the Port that it allegedly failed in its oversight and control responsibilities and is therefore liable for the exceedances identified by plaintiff. The Port "is not required to play a guessing game" - it knows exactly of what it is accused and has brought this motion to challenge the legal viability of the claim. Marina Point Dev., 566 F.3d at 801.

**B. Failure to State a Claim, Fed. R. Civ. P. 12(b)(6)**

In the context of a motion to dismiss for failure to state a claim, the Court's review is generally limited to the contents of the complaint. Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996). Nevertheless, Ninth Circuit authority allows the Court to consider documents referenced extensively in the complaint, documents that form the basis of plaintiff's claim, and matters of judicial notice when determining whether the allegations of the complaint state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). United States v. Ritchie, 342 F.3d 903, 908-09 (9th Cir. 2003). The documents attached to plaintiff's complaint and the permit-related documents and consent decrees submitted by the Port fall within one or more of theses categories and have been considered in ruling on this motion. The Court has taken judicial notice of the documents filed in previous court cases not for the truth of the facts recited therein, but for the existence of the cases, the claims asserted, and the terms of the negotiated resolutions.

---

> direct the activities of those who control the mechanisms causing pollution at the facility, and prevent and abate damages associated with those discharges. The Port exerts substantial control over the operations at [its tenant], and therefore, is responsible for the violations of the CWA...

Dkt. # 25 at 67.

ORDER DENYING PORT OF SEATTLE'S
MOTION TO DISMISS - 4

Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001).

The question for the Court on a motion to dismiss is whether the facts alleged in the complaint sufficiently state a "plausible" ground for relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

> A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Plausibility requires pleading facts, as opposed to conclusory allegations or the formulaic recitation of elements of a cause of action, and must rise above the mere conceivability or possibility of unlawful conduct that entitles the pleader to relief. Factual allegations must be enough to raise a right to relief above the speculative level. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Nor is it enough that the complaint is factually neutral; rather, it must be factually suggestive.

Somers v. Apple, Inc., 729 F.3d 953, 959-60 (9th Cir. 2013) (internal quotation marks and citations omitted). All well-pleaded factual allegations are presumed to be true, with all reasonable inferences drawn in favor of the non-moving party. In re Fitness Holdings Int'l, Inc., 714 F.3d 1141, 1144-45 (9th Cir. 2013). If the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate. Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1041 (9th Cir. 2010).

Section 301(a) of the CWA states that "the discharge of any pollutant by any person shall be unlawful" unless the discharge is in compliance with the CWA. 33 U.S.C. § 1311(a). As relevant here, discharges from the marine cargo facility would be in compliance with the CWA if they were within the limits imposed by the ISGP. Plaintiff alleges numerous exceedances of the ISGP standards over the last six years. In those circumstances, the citizen suit provision of

the CWA authorizes a private lawsuit against "any person" that is "alleged to be in violation of . . . an effluent standard or limitation" under the statute. 33 U.S.C. § 1365(a)(1). The Port argues that only the holder of a discharge permit can be held liable for violations of the effluent standards and limitations established therein, and that any other entity's ability or responsibility to control the discharges is irrelevant.

It is well settled that "the starting point for interpreting a statute is the language of the statute itself." Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980). The relevant language of the CWA is broad and imposes liability on "any person" who is alleged to be in violation of the permit limitations. Liability is not limited to the permit-holder (or any other category of defendant). Rather, "any person" who violates the effluent standards or limitations imposed by the applicable permit can be named a defendant in a citizen suit.[3]

Nor does the weight of the case law - especially in this district - support the Port's claim that only permit holders can be held responsible for violations of the effluent standards and limitations specified in the permit. Rather than a bright-line rule allowing or disallowing claims

---

[3] The Port's reliance on Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., 484 U.S. 49 (1987), for the proposition that Congress intended to limit citizen suits under the CWA to those asserted against permit holders is misplaced. In Gwaltney, the Supreme Court determined that the CWA provision authorizing private suits against anyone "in violation of . . . an effluent standard or limitation" meant the alleged unlawful discharge had to be on-going or at least intermittent and likely to recur: it cannot be wholly in the past. Id. at 64. In this context, the Court compared the CWA's language with other statutes, noting that the Solid Waste Disposal Act had recently been amended to explicitly target past violations by authorizing suit against any "past and present" generator, transporter, owner, or operator "who has contributed or is contributing" to hazardous waste handling, transportation, or disposal. Id. at 57 n.2. The issue was the timing of the violation, not who could be sued. As to the latter question, the CWA is actually broader than the Solid Waste Disposal Act in that it authorizes a citizen suit against "any person" who engages in the unlawful conduct, rather than listing categories of potential defendants.

ORDER DENYING PORT OF SEATTLE'S
MOTION TO DISMISS - 6

against non-permittees, the majority of courts utilize a fact-based analysis to determine if a non-permittee has, in its own right, acted in such a way that it could reasonably be considered to be in violation of federal pollution control requirements such as the conditions of a permit. See Puget Soundkeeper All. v. APM Terminals Tacoma, LLC, C17-5016BHS, 2018 WL 2560995, *3-4 (W.D. Wash. June 4, 2018) (rejecting the Port of Tacoma's argument that, as the owner of the marine cargo terminal at issue, it could not be liable for its tenant's unlawful discharges because it was not the permit holder); Puget Soundkeeper All. v. Cruise Terminals of Am., LLC, 216 F. Supp.3d 1198, 1206 (W.D. Wash. 2015) (finding that both the Port and its lessee, a cruise terminal operator, could be held liable for unpermitted discharges from the facility);[4] Assateague Coastkeeper v. Alan and Kristin Hudson Farm, 727 F. Supp.2d 433, 442-43 (D. Md. 2010) (holding that a corporation with extensive control over the permit holder's chicken operations can be liable for violations of the permit limitations); Draper v. H. Roberts Family, LLC, C06-3057CC, 2009 WL 10668408, *12-13 (N.D. Ga. Mar. 30 2009) (noting that "[c]ontrol over the activities in question, coupled with knowledge is sufficient to impose liability under the Clean Water Act" on individual owners and managers of the corporate permit holder); Puget Soundkeeper All. v. Tacoma Metals, Inc., C07-5227RJB, 2008 WL 4455705, * 2 (W.D. Wash. Jan. 23, 2008) (rejecting a corporate officer's argument that he could not be held liable for the unlawful discharges of the corporate permit-holder); U.S. v. Avatar Holdings, Inc., C93-0281, 1995 WL 871260, *14 (M.D. Fla. Nov. 22, 1995) (noting that a parent corporation can be liable

---

[4] Because neither the Port nor its lessee had obtained a permit in Cruise Terminals, the Court finds that the issue presented in that case was not identical for purposes of the doctrine of collateral estoppel.

ORDER DENYING PORT OF SEATTLE'S
MOTION TO DISMISS - 7

for its subsidiary's permit violations if the parent "acted in such a way that it may be considered a 'person who violates' under § 309(d) of the Clean Water Act, through such actions as directing or causing the violations, or exercising actual and pervasive control of [the subsidiary] to the extent of actually being involved in the daily operations of [the subsidiary]."); United States v. Lambert, 589 F.Supp. 366, 374 (M.D. Fla. 1984) (holding that the wife, as co-owner of the polluted property, was not an appropriate target of civil penalties because she had not "actively directed or caused" the unlawful discharges). But see Black Warrior Riverkeeper v. Thomas, C13-0410AKK, 2013 WL 1663871, * 3 (N.D. Ala. Apr. 12, 2013) (finding that the duty to comply with permit limitations applies only to the permit holder, not to the owner of the facility); Draper, 2009 WL 10668404, *21 (holding that the contractor who actually discharged pollutants cannot be liable for exceeding permit limits because it was not the permit holder and therefore not subject to the permit's limitations);[5] Sierra Club, Haw. Chapter v. City and Cty. of Honolulu, 415 F. Supp.2d 1119, 1128 (D. Haw. 2005) (dismissing claims against director of permit-holding defendant because he was not the permittee and therefore cannot be held liable for its violation).

The Court finds that, while permit terms and conditions clearly apply to the permit holder, other persons can also be liable for permit violations if plaintiff establishes that, through their acts or omissions, the non-permittee violated the effluent standards or limitations specified in the permit. The language of the statute, the majority of the relevant case law, and policy

---

[5] The Draper decision is interesting because the district court engaged in a "control" analysis to hold the individuals who owned or managed the corporate permittee liable but ignored the contractor's actual participation in - and absolute control over - the violative activites.

ORDER DENYING PORT OF SEATTLE'S
MOTION TO DISMISS - 8

considerations regarding the imposition of liability upon those who control the polluting activities all favor this outcome. The Port's motion to dismiss is DENIED.

Dated this 4th day of March, 2019.

*MrT S Lasnik*
Robert S. Lasnik
United States District Judge

ORDER DENYING PORT OF SEATTLE'S
MOTION TO DISMISS - 9