UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| PUGET SOUNDKEEPER ALLIANCE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:18-cv-00540-RSL |
| v. | ) | |
| | ) | |
| TOTAL TERMINALS | ) | CONSENT DECREE |
| INTERNATIONAL, LLC; and PORT OF | ) | |
| SEATTLE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.    STIPULATIONS

WHEREAS, Plaintiff Puget Soundkeeper Alliance ("Soundkeeper") filed an amended complaint against Defendants Total Terminals International, LLC ("TTI") and the Port of Seattle (the "Port") (collectively "Defendants") alleging violations of the Clean Water Act ("CWA"), 33 U.S.C. § 1251 et seq., relating to discharges of stormwater from TTI's and the Port's facility located at 401 Alaskan Way S, Seattle, WA 98104 (the "Facility"), and seeking declaratory and injunctive relief, civil penalties, and attorneys' fees and costs.

WHEREAS, TTI will be vacating the Facility, terminating its lease with the Port, and ceasing operation at the Facility by December 31, 2019.

WHEREAS, as of the date of entry of this Consent Decree, the Port does not yet have a replacement tenant for TTI at the Facility. The Port anticipates that a portion of the Terminal 46

CONSENT DECREE
No. 2:18-cv-00540-RSL
1

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

101100435.1 0061365-00051

1  site may become a cruise ship terminal and the remaining portion may have marine cargo

2  operations.

3       WHEREAS, Soundkeeper, TTI, and the Port agree that settlement of these matters is in

4  the best interest of the parties and the public, and that entry of this Consent Decree is the most

5  appropriate means of resolving this action.

6       WHEREAS, Soundkeeper, TTI, and the Port stipulate to the entry of this Consent Decree

7  without trial or adjudication of any issues of fact or law regarding Soundkeeper's claims that

8  remain undecided, and without any admissions other than those expressly provided in this

9  Consent Decree.

10       DATED this 11th day of September, 2019

11  KING & SPALDING LLP          SMITH & LOWNEY PLLC

12

13  By  s/Adam Sowatzka          By  s/Alyssa Englebrecht
   Adam Sowatzka, *pro hac vice*     Alyssa Englebrecht, WSBA #46773

14  Joseph Akrotirianakis, *pro hac vice*   Knoll Lowney, WSBA #23457
                    Attorneys for Plaintiff

15  BAUER MOYNIHAN & JOHNSON LLP   Puget Soundkeeper Alliance

16  Matthew Crane, WSBA #18003

17  Attorneys for Defendant
   Total Terminals International, LLC

18

19  STOEL RIVES LLP           PUGET SOUNDKEEPER ALLIANCE

20  By s/Beth Ginsberg
   Beth Ginsberg, WSBA #18523     By _____

21  Veronica Keithley, WSBA #52784   Walt Tabler
   Attorneys for Defendant        Puget Soundkeeper Board Member

22  Port of Seattle

23

24

25

26

CONSENT DECREE
No. 2:18-cv-00540-RSL
2

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

101100435.1 0061365-00051

1   site may become a cruise ship terminal and the remaining portion may have marine cargo

2   operations.

3          WHEREAS, Soundkeeper, TTI, and the Port agree that settlement of these matters is in

4   the best interest of the parties and the public, and that entry of this Consent Decree is the most

5   appropriate means of resolving this action.

6          WHEREAS, Soundkeeper, TTI, and the Port stipulate to the entry of this Consent Decree

7   without trial or adjudication of any issues of fact or law regarding Soundkeeper's claims that

8   remain undecided, and without any admissions other than those expressly provided in this

9   Consent Decree.

10         DATED this __th day of _____, 2019

11   KING & SPALDING LLP                      SMITH & LOWNEY PLLC

12

13   By     s/                               By  s/Alyssa Englebrecht
     Adam Sowatzka, *pro hac vice*           Alyssa Englebrecht, WSBA #46773
14   Joseph Akrotirianakis, *pro hac vice*    Knoll Lowney, WSBA #23457
                                             Attorneys for Plaintiff
15   BAUER MOYNIHAN & JOHNSON LLP             Puget Soundkeeper Alliance

16   By s/
17   Matthew Crane, WSBA #18003
     Attorneys for Defendant
18   Total Terminals International, LLC

19
     STOEL RIVES LLP                         PUGET SOUNDKEEPER ALLIANCE
20
     By s/                                   By
21   Beth Ginsberg, WSBA #18523              Walt Tabler
     Veronica Keithley, WSBA #52784          Puget Soundkeeper Board Member  *President*
22   Attorneys for Defendant
     Port of Seattle

23

24

25

26

CONSENT DECREE                              SMITH & LOWNEY, P.L.L.C.
No. 2:18-cv-00540-RSL                       2317 EAST JOHN ST.
2                                           SEATTLE, WASHINGTON 98112
                                            (206) 860-2883

101100435.1 0061365-00051

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

TOTAL TERMINALS INTERNATIONAL, LLC

By _____
      Graham Scott
      Chief Executive Officer

PORT OF SEATTLE

By _____
      Stephen P. Metruck
      Executive Director
      Port of Seattle

## I.   ORDER AND DECREE

THIS MATTER came before the Court upon the foregoing Stipulations of the parties. Having considered the Stipulations and the promises set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

1.     This Court has jurisdiction over the parties and subject matter of this action.

2.     Each signatory for the parties certifies for that party that he or she is fully authorized by the party or parties he or she represents to enter into the terms and conditions of this Consent Decree and to legally bind the party or parties, their successors in interest and assigns of the parties to it.

3.     This Consent Decree applies to and binds the parties and their successors and assigns.

4.     This Consent Decree and any injunctive relief ordered within will apply to the operation, oversight, or both by the Port and TTI of the Facility, which is currently subject to National Pollutant Discharge Elimination System Permit No. WAR000465 (the "NPDES permit").

5.     This Consent Decree is a full and complete settlement, covenant not to sue, and release of all the claims alleged in the amended complaint, and all other claims known and

CONSENT DECREE
No. 2:18-cv-00540-RSL
3

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

101100435.1 0061365-00051

1   unknown, contingent or otherwise, for any acts or omissions, existing as of the date of entry of

2   this Consent Decree, that could be asserted under the Clean Water Act, 33 U.S.C. §§ 1251-1387,

3   arising from operations of the Facility against TTI, its parent, affiliates, subsidiaries, employees,

4   agents, successors and assigns and/or the Port, its affiliates, employees, or agents. These claims

5   are released and dismissed with prejudice.

6        6.    This Consent Decree is a settlement of disputed facts and law. This Consent

7   Decree is not an admission or adjudication regarding any specific allegations by Soundkeeper in

8   this case or of any fact or conclusion of law related to those allegations that remain undecided,

9   nor evidence of any wrongdoing or misconduct on the part of TTI or the Port.

10        7.    TTI and the Port agree to the following terms and conditions in full and complete

11   satisfaction of all the claims covered by this decree:

12        a.    Until such time as TTI vacates the Facility and ceases all operations there,

13   TTI and the Port will comply with all conditions of the NPDES permit and any successor,

14   modified, or replacement permit authorizing discharges of stormwater associated with

15   industrial activity from the Facility. Until such time as TTI vacates the Facility and

16   ceases all operations there, TTI and/or the Port will continue to implement all monitoring

17   and best management practices ("BMPs") which are currently being implemented at the

18   Facility;

19        b.    Within thirty (30) days after TTI's departure from the Facility, the Port

20   and/or TTI will inspect and clean all stormwater lines, catch basins, and the existing

21   treatment systems, at the Facility. Within thirty (30) days after TTI's departure from the

22   facility, TTI and/or the Port will sweep the entire Facility and properly dispose of all

23   swept material. Within ten (10) days after the date upon which TTI and/or the Port has

24   completed the inspection, stormwater system cleaning, and sweeping obligations

25   described in this paragraph, the Port will permit Soundkeeper and its consultant to inspect

26   the Facility to confirm that the Port and TTI have completed the work described above,

CONSENT DECREE
No. 2:18-cv-00540-RSL
4

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

101100435.1 0061365-00051

1  TTI has ceased all industrial activity, properly vacated the facility, and has obtained

2  Ecology's concurrence that TTI has terminated its coverage under the NPDES permit.

3  The parties will work cooperatively to find a mutually agreeable time for Soundkeeper's

4  inspection. If for any reason Soundkeeper is unable to enter the Facility by the deadline

5  provided in this paragraph, TTI and the Port's obligation to permit Soundkeeper onto the

6  Facility will continue and the parties will cooperate to schedule a time for Soundkeeper's

7  entry as soon as practicable.

8       c.      The Port will perform regular and necessary maintenance on the Facility's

9  existing treatment systems per the Operation & Maintenance manual's recommendations

10  and more frequently as needed to provide optimal treatment function, until any of the

11  following occurs:

12       i.      The existing treatment systems are replaced with another properly

13       engineered and approved treatment system, or;

14       ii.     A new tenant commences marine cargo operations or other permit

15       triggering industrial operations at the Facility in any basin, applies for and

16       receives Industrial Stormwater General Permit ("ISGP") coverage at the Facility,

17       and assumes full responsibility for maintaining the treatment system(s), or;

18       iii.    A new tenant commences cruise ship terminal operations in any

19       basin in which the existing treatment system(s) is currently installed, implements

20       the BMPs identified in paragraph 7.d.i, below, and assumes full responsibility for

21       maintaining the treatment system(s).

22       d.      In the event that all or a portion of the Facility becomes a cruise ship

23  terminal, the Port will, for that portion of the Facility:

24       i.      Implement the BMPs for cruise ship operations identified in

25       paragraph 8 of the July 6, 2016 consent decree entered in *Puget Soundkeeper*

26       *Alliance v. Cruise Terminals of America, LLC et al.*, W.D. Wash. No. 2:14-cv-

CONSENT DECREE
No. 2:18-cv-00540-RSL
5

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

101100435.1 0061365-00051

1    00476, a copy of which is attached hereto as <u>Attachment A</u>, at this Facility
2    immediately upon commencement of operations as a cruise ship terminal. The
3    Port will either implement these BMPs itself, or the Port will require its tenant or
4    a designee to implement these BMPs. If the Port chooses to require its tenant to
5    implement these BMPs, the implementation of these BMPs will be an enforceable
6    provision of the Port's lease with that tenant. Any failure to implement the BMPs
7    in <u>Attachment A</u> will be a violation of this Consent Decree. The Port, its
8    designee, or its tenant will provide Soundkeeper with a report twice per year,
9    consistent with Paragraph 9 of Attachment A, and which additionally documents
10   the implementation of such BMPs with photos provided to Soundkeeper. The
11   requirement to implement such BMPs shall specifically be made an obligation of
12   the tenant in any future lease between the Port and cruise terminal tenants. In
13   consideration of these obligations, Soundkeeper covenants not to sue the Port, or
14   materially support, financially or otherwise, any other person to sue the Port, for
15   any of the discharges associated with cruise-related activities.[1]

16          ii.    Include in any request for proposals for a cruise operator, or
17   otherwise notify potential cruise operators in writing with a copy to Soundkeeper,
18   prior to commencing cruise operations, that ISGP coverage may be required at
19   this Facility.

20          e.    In the event that all or a portion of the Facility is used for marine cargo
21   operations which have vehicle maintenance activity, equipment cleaning operations, or
22   airport deicing operations, or other permit-triggering industrial operations,[2] the Port will,

---

23

24   [1] By agreeing to the obligations set forth in subsections 7(d) of this Consent Decree, Soundkeeper does not concede, and expressly retains the right to contest in future litigation, the proposition that cruise ship terminals do not engage in industrial activity requiring ISGP coverage for associated stormwater discharges.

25   [2] By agreeing to the obligations set forth in subsection 7(e), Soundkeeper does not concede, and expressly retains the right to contest in future litigation, the proposition that the conditions of the ISGP apply only to those portions of the

26

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

1   for the entire footprint[3] of the portion of the Facility which is being leased as a marine

2   cargo terminal or other permit-triggering operation, and areas otherwise used by the

3   tenant including all exclusive and preferential use areas identified in the lease:

4           i.      Sweep, or require that the future tenant sweep, the wharf area[4] of

5   the Facility, as identified on the map attached hereto as Attachment B, so that the

6   entire surface of the wharf area is swept bi-weekly;

7           ii.     Conduct, or require that the future tenant conduct, quarterly

8   sampling of at least one representative discharge point from the wharf, identified

9   on the map attached hereto as Attachment B, and the results of this quarterly

10  sampling must be submitted to Ecology and Soundkeeper, consistent with the

11  requirements of the Port's Municipal Separate Storm Sewer System ("MS4")

12  permit, except that the Port need not sample during unsafe conditions. If, at any

13  point during the period of this Consent Decree, a Court orders that the wharf area

14  of marine cargo terminals is subject to the requirements of the ISGP in the

15  absence of industrial activities on the wharf, then the results must be submitted

16  quarterly;

17          iii.    In the event the Port enters into a lease agreement with an

18  international container terminal operator with operations substantially similar to

19  TTI's (i.e., a maritime transshipment terminal handling international

20  containerized cargo at a rate of at least 110 container lifts per acre per month on

---

22  facility upon which vehicle maintenance or equipment cleaning is performed, rather than the entire footprint of
    marine transportation facilities.

23  [3] By agreeing to the obligations set forth in subsection 7(e), the Port does not concede, and expressly retains the
    right to contest in future litigation, the proposition that the conditions of the ISGP apply to the entire footprint of

24  marine transportation facilities, rather than only to those portions of the facility upon which vehicle maintenance or
    equipment cleaning is performed.

25  [4] By agreeing to the obligations set forth in subsection 7(e), the Port does not concede, and expressly retains the
    right to contest in future litigation, the proposition that the wharf area is covered under the ISGP in the absence of
    industrial activities on the wharf.

CONSENT DECREE
No. 2:18-cv-00540-RSL
7

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

101100435.1 0061365-00051

1    average), the Port will design or hire a consultant to design a stormwater

2    treatment system to modify or replace the existing treatment system(s) for all

3    basins use for any such operations and draft an engineering report detailing the

4    proposal. The Port will complete the draft engineering report sufficiently in

5    advance of the initiation of operations by the new tenant such that the process set

6    forth in subparagraphs 7.e.iii.A-7.e.iii.F, *infra*, can take place before operations

7    begin. In this case, the Port will consult with Soundkeeper as follows:

8           A.     The Port will provide the engineering report to

9    Soundkeeper within ten (10) days of its completion;

10          B.     Soundkeeper will have thirty (30) days to provide

11   objections, comments, and/or proposed revisions to the draft engineering

12   report.  During this thirty (30) day time period, the Port will permit

13   Soundkeeper to inspect the Facility. The parties will work cooperatively to

14   find a mutually agreeable time for Soundkeeper's inspection.  If for any

15   reason Soundkeeper is unable to enter the Facility by the deadline

16   provided in this paragraph, the Port's obligation to permit Soundkeeper

17   onto the Facility will continue and the parties will cooperate to schedule a

18   time for Soundkeeper's entry as soon as practicable;

19          C.     The Port will respond in writing to Soundkeeper's

20   objections, comments, and/or proposed revisions within fourteen (14)

21   days;

22          D.     Should the Port not accept any of Soundkeeper's

23   comments, objections, and/or proposed revisions, the parties, including the

24   author of the Port's draft engineering report, will meet and confer in good

25   faith about any remaining disagreements as soon as practical;

26

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

E.     Should the Port not accept Soundkeeper's comments, objections and/or proposed revisions, the Port and/or its tenant will submit the engineering report, as reviewed and revised, along with Soundkeeper's comments, objections and/or proposed revisions, to Ecology with a citation to this Consent Decree and a joint request from the Port and/or its tenant and Soundkeeper that Ecology review the Port's/its tenant's submittal and determine what changes are necessary for approval, if any, in light of Soundkeeper's comments, objections and/or proposed revisions;

F.     The Port will promptly comply with the engineering report in the form revised and/or approved by Ecology and will make all reasonable efforts to install the treatment system prior to the commencement of marine cargo terminal or other permit-triggering operations at the facility.

iv.     In the event a future tenant that is not an international container terminal operator with operations substantially similar to TTI's (i.e., a maritime transshipment terminal handling international containerized cargo at a rate of at least 110 container lifts per acre per month on average) triggers a Level 3 corrective action as defined by ISGP Condition S8.D or any comparable condition in its Stormwater Pollution Prevention Plan's Sampling Plan, the Port will design or hire a consultant to design a stormwater treatment system to modify or replace the existing treatment system(s) for all basins used for any marine cargo terminal operations or other permit-triggering industrial operations and draft an engineering report detailing the proposal. The Port will consult with Soundkeeper as outlined above in subparagraphs 7.e.iii.A-7.e.iii.F.

v.     In the event any new tenant triggers a Level 2 or 3 corrective action, as defined by ISGP Condition S8.D or any comparable condition in any

CONSENT DECREE
No. 2:18-cv-00540-RSL
9

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

101100435.1 0061365-00051

1             subsequent iteration of the ISGP, and if the tenant thereafter requests a

2             modification of permit coverage in the form of a waiver or an extension of time to

3             complete the Level 2 or 3 corrective action, per ISGP Condition S8.C.4 or S8.D.5

4             or any comparable condition in any subsequent iteration of the ISGP, the Port

5             and/or the tenant will inform Soundkeeper in writing of this request

6             simultaneously with Ecology.

7                      vi.      In the event that future tenant(s) at the Facility do not have

8             operations which have vehicle maintenance activity, equipment cleaning

9             operations, or airport deicing operations, or other permit-triggering industrial

10            operations, and therefore do not obtain ISGP coverage for the Facility, the Port

11            will provide a twice yearly report to Soundkeeper, in June and December of each

12            year prior to the expiration of this Consent Decree, identifying the tenant(s)

13            operating at the Facility and the nature of their operations.

14       8.       In the spirit of demonstrating a cooperative resolution to the community, the

15 Parties will endeavor to work together in good faith in issuing a joint press release regarding

16 filing of this Consent Decree. The party planning to issue such release shall give the other parties

17 48 hours opportunity to review the draft and provide their respective input.  If any party objects

18 to any language of that draft press release within one (1) business day (24 hours) (or the same

19 time on the following business day if over a weekend or holiday) of receiving the draft, the

20 parties shall in good faith work together to resolve the issue(s) prior to issuing the press release.

21 If, after 72 hours, the parties are unable to agree on a joint press release, each is free to issue their

22 own respective press release. Nothing in this decree limits any of the parties from issuing press

23 releases around other past or future milestones in the course of this case and/or settlement.

24 Nothing in this decree in any way limits statements that can be made to the press.

25       9.       Not later than ten (10) days after the entry of this Consent Decree by this Court,

26 TTI will pay a total of $735,000 to the Rose Foundation for projects to improve the water quality

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

101100435.1 0061365-00051

1     of Elliott Bay, as described in <u>Attachment C</u> to this Consent Decree, for which TTI and the Port

2     are jointly and severally liable. The check will be made to the order of The Rose Foundation and

3     delivered to: The Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Payment will

4     include the following reference in a cover letter or on the check: "Consent Decree, Soundkeeper

5     v. Total Terminals International, LLC, et al." A copy of the check and cover letter, if any, will

6     be sent simultaneously to Soundkeeper and its counsel.

7         10.    Within ten (10) days of entry of this Consent Decree by the Court, TTI will pay a

8     total of $165,000 dollars to cover Soundkeeper's litigation fees, expenses, and costs (including

9     reasonable attorney, expert witness and post-Consent Decree fees) by check payable and mailed

10    to Smith & Lowney, PLLC, 2317 East John St., Seattle, WA 98112, attn: Knoll Lowney. TTI's

11    and the Port's payment will be in full and complete satisfaction of any claims Soundkeeper has

12    or may have, either legal or equitable, and of any kind or nature whatsoever, for fees, expenses,

13    and costs incurred in the Litigation.

14        11.    The payments described in Paragraphs 8 and 9 above shall be in full and complete

15    satisfaction of any claims Soundkeeper has or may have against the Port or TTI, either legal or

16    equitable, and of any kind or nature whatsoever, for fees, expenses, and cost incurred in this

17    litigation, or for civil penalties, or payments in lieu of civil penalties pursuant to a supplemental

18    environmental project under the CWA.

19        12.    With the exception of actions to enforce this Consent Decree, and in consideration

20    of TTI's and the Port's obligations under this Consent Decree, for the term of this Consent

21    Decree, as defined in paragraph 15, below, Soundkeeper covenants not to sue TTI, the Port, the

22    Northwest Seaport Alliance as agent of the Port, or materially support, financially or otherwise,

23    any person to sue TTI, the Port, the Northwest Seaport Alliance as agent of the Port, for any and

24    all claims alleged against TTI or the Port in the Amended Complaint and all other claims, known

25    and unknown, existing as of the date of entry of this Consent Decree, that could be asserted

26

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

101100435.1 0061365-00051

1   against TTI or the Port arising under the Clean Water Act, 33 U.S.C. §§ 1251-1387 with respect

2   to the Facility.

3       13.     A force majeure event is any event outside the reasonable control of TTI and/or

4   the Port that causes a delay in performing tasks required by this decree that cannot be cured by

5   due diligence. Delay in performance of a task required by this decree caused by a force majeure

6   event is not a failure to comply with the terms of this decree, provided that TTI and/or the Port

7   timely notifies Soundkeeper of the event; the steps that TTI and/or the Port will take to perform

8   the task; the projected time that will be needed to complete the task; and the measures that have

9   been taken or will be taken to prevent or minimize any impacts to stormwater quality resulting

10  from delay in completing the task.

11      TTI and/or the Port will notify Soundkeeper of the occurrence of a force majeure event as

12  soon as reasonably possible but, in any case, no later than fifteen (15) days after the occurrence

13  of the event.  In such event, the time for performance of the task will be extended for a

14  reasonable period of time following the force majeure event.

15      By way of example and not limitation, force majeure events include

16          a.      Acts of God, war, insurrection, or civil disturbance;

17          b.      Earthquakes, landslides, fire, floods;

18          c.      Actions or inactions of third parties over which defendants have no

19                  control;

20          d.      Unusually adverse weather conditions;

21          e.      Restraint by court order or order of public authority;

22          f.      Strikes;

23          g.      Any permit or other approval sought by TTI and/or the Port or a future

24                  Port tenant from a government authority to implement any of the actions

25                  required by this consent decree where such approval is not granted or is

26

CONSENT DECREE                                  SMITH & LOWNEY, P.L.L.C.
No. 2:18-cv-00540-RSL                            2317 EAST JOHN ST.
12                                              SEATTLE, WASHINGTON 98112
                                                     (206) 860-2883

101100435.1 0061365-00051

1          delayed, and where TTI and/or the Port has timely and in good faith

2          sought the permit or approval; and

3        h.    Litigation, arbitration, or mediation that causes delay.

4      14.    This Court retains jurisdiction over this matter. And, while this Consent Decree

5  remains in force, this case may be reopened without filing fee so that the parties may apply to the

6  Court for any further order that may be necessary to enforce compliance with this decree or to

7  resolve any dispute regarding the terms or conditions of this Consent Decree. In the event of a

8  dispute regarding implementation of, or compliance with, this Consent Decree, the parties must

9  first attempt to resolve the dispute by meeting to discuss the dispute and any suggested measures

10 for resolving the dispute.  The provisions of CWA section 505(d), 33 U.S.C. § 1365(d),

11 regarding awards of costs of litigation (including reasonable attorney and expert witness fees) to

12 any prevailing or substantially prevailing party, will apply to any proceedings seeking to enforce

13 the terms and conditions of this Consent Decree.

14     15.    The parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), no consent

15 judgment can be entered in a Clean Water Act suit in which the United States is not a party prior

16 to forty-five (45) days following the receipt of a copy of the proposed consent judgment by the

17 U.S. Attorney General and the Administrator of the U.S. EPA.  Therefore, upon the filing of this

18 Consent Decree by the parties, Soundkeeper will serve copies of it upon the Administration of

19 the U.S. EPA and the Attorney General, with a copy to TTI and the Port.

20     16.    This Consent Decree will take effect upon entry by this Court.  It terminates three

21 (3) years after that date.

22     17.    All parties have participated in drafting this Consent Decree.

23     18.    This Consent Decree may be modified only upon the approval of the Court.

24     19.    If for any reason the Court should decline to approve this Consent Decree in the

25 form presented, this Consent Decree is voidable at the discretion of either party.  The parties

26

CONSENT DECREE
No. 2:18-cv-00540-RSL
13

101100435.1 0061365-00051

1  agree to continue negotiations in good faith in an attempt to cure any objection raised by the

2  Court to entry of this Consent Decree.

3       20.     Notifications required by this Consent Decree must be in writing.  The sending

4  party may use any of the following methods of delivery: (1) personal delivery; (2) registered or

5  certified mail, in each case return receipt requested and postage prepaid; or (3) a nationally

6  recognized overnight courier, with all fees prepaid.  For a notice or other communication

7  regarding this decree to be valid, it must be delivered to the receiving party at the one or more

8  addresses listed below or to any other address designated by the receiving party in a notice in

9  accordance with this paragraph 17.

10

11       if to Soundkeeper:

12     Katelyn Kinn
        Puget Soundkeeper Alliance
13     130 Nickerson Street, Suite 107
        Seattle, WA 98109
14     Email: katelyn@pugetsoundkeeper.org

15     and to:

16
        Alyssa Englebrecht
17     Knoll Lowney
        Smith & Lowney PLLC
18     2317 East John St.
        Seattle, WA   98112
19     email: alyssa@smithandlowney.com, knoll@smithandlowney.com

20     if to TTI:

21
        Robert Johnson
22     Chief Compliance Officer
        Total Terminals International, LLC
23     301 Mediterranean Way
        Long Beach, CA 90802
24     email: robertjo@totalterminals.com

25
        Adam G. Sowatzka
26     Joseph N. Akrotirianakis

CONSENT DECREE
No. 2:18-cv-00540-RSL
14

101100435.1 0061365-00051

1   King & Spalding LLP
    1180 Peachtree Street, NE, Suite 1600
2   Atlanta, GA 30309-3521
    email: asowatzka@kslaw.com; jakro@kslaw.com
3

4   if to the Port:

5   Elizabeth Black
    Senior Port Counsel
6   Port of Seattle
    2711 Alaskan Way
7   Seattle, WA 98111
    email: black.e@portseattle.org
8

9       A notice or other communication regarding this Consent Decree will be effective when

10  received unless the notice or other communication is received after 5:00 p.m. on a business day,

11  or on a day that is not a business day, then the notice will be deemed received at 9:00 a.m. on the

12  next business day.  A notice or other communication will be deemed to have been received: (a) if

13  it is delivered in person or sent by registered or certified mail or by nationally recognized

14

15  overnight courier, upon receipt as indicated by the date on the signed receipt; or (b) if the

16  receiving party rejects or otherwise refuses to accept it, or if it cannot be delivered because of a

17  change in address for which no notice was given, then upon that rejection, refusal, or inability to

18  deliver.

19
    DATED this 7th day of November, 2019.
20

21

22  _____
    HON. ROBERT S. LASNIK
23  UNITED STATES DISTRICT JUDGE

24  Presented by:

25

26

CONSENT DECREE
No. 2:18-cv-00540-RSL
15

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

101100435.1 0061365-00051

1

2   KING & SPALDING LLP                    SMITH & LOWNEY PLLC

3   By s/Adam Sowatzka                     By  s/Alyssa Englebrecht
    Adam Sowatzka, *pro hac vice*          Alyssa Englebrecht, WSBA #46773
4   John Fortuna, *pro hac vice*           Knoll Lowney, WSBA #23457
    Joseph Akrotirianakis, *pro hac vice*  Attorneys for Plaintiff
5   Attorneys for Defendant                Puget Soundkeeper Alliance
    Total Terminals International, LLC

6   BAUER MOYNIHAN & JOHNSON LLP

7   By s/Matthew Crane
    Matthew Crane, WSBA #18003
8   Attorneys for Defendant
    Total Terminals International, LLC
9

10  STOEL RIVES LLP

11  By s/Maren Norton
    Maren Norton, WSBA # 35434
12  Beth Ginsberg, WSBA #18523
    Veronica Keithley, WSBA #52784
13  Attorneys for Defendant
    Port of Seattle
14

15

16

17

18

19

20

21

22

23

24

25

26

CONSENT DECREE                             SMITH & LOWNEY, P.L.L.C.
No. 2:18-cv-00540-RSL                      2317 EAST JOHN ST.
16                                         SEATTLE, WASHINGTON 98112
                                           (206) 860-2883

101100435.1 0061365-00051

# ATTACHMENT A

THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PUGET SOUNDKEEPER ALLIANCE,

               Plaintiff,

     v.

CRUISE TERMINALS OF AMERICA,

LLC, et al.,

             Defendants.

CASE NO. C14-0476 JCC

ORDER ENTERING CONSENT DECREE

THIS MATTER comes before the Court upon the parties' joint stipulated motion for entry of a consent decree (Dkt. No. 121). Having considered the stipulations and the promises and agreements set forth below, the Court ORDERS, ADJUDGES, AND DECREES as follows:

1.    The Court has jurisdiction over the parties and subject matter of this action.

2.    Each signatory for the parties certifies that he or she is authorized to enter into the agreements set forth below for that party.

3.    This Consent Decree applies to the cruise terminal at Pier 66, 2225 Alaskan Way, Seattle, Washington 98121 (the "Facility").

4.    This Consent Decree binds Soundkeeper's successors and assigns and any successor owner or operator of the Facility.

ORDER ENTERING CONSENT DECREE
PAGE - 1

5.     The parties are concurrently executing an agreement with respect to implementation of best management practices at the cruise terminal at Pier 91, 2001 West Garfield St., Seattle, Washington 98119 ("Pier 91 Agreement").  Certain terms of the Pier 91 Agreement are referenced in this Consent Decree, but the Pier 91 Agreement sets forth the exclusive terms of, remedy for enforcement of, and resolution of disputes arising under the Pier 91 Agreement.

6.     This Consent Decree is a full and complete settlement of the claims in the First Amended Complaint and all other claims known and unknown and existing as of the date of entry of this Consent Decree that could be asserted against CTA or the Port under the Clean Water Act, 33 U.S.C. §§ 1251-1387, arising from ownership or operations of the Facility (the "Claims").  The Claims are released and dismissed with prejudice.  Enforcement of this decree is Soundkeeper's exclusive remedy for any violation of its terms.

7.     This Consent Decree is a settlement of disputed facts and law.  It is not an admission or adjudication regarding any allegations by Soundkeeper in this case or of any fact or conclusion of law related to those allegations.  It is not an admission by CTA or the Port of any liability and is not evidence of any wrongdoing or misconduct on the part of CTA or the Port.

8.     As partial consideration for the releases and settlement of claims as provided herein, the Port agrees that it, its tenant, or a designee will implement the following best management practices (BMPs) for cruise operations at the Facility on Pier 66, after entry of the Consent Decree:

      **a.     Fueling and Maintenance:**

          i.     No fueling, except for the gangway and cranes which are discussed below, may occur on any portion of the Facility that discharges stormwater to Elliott Bay.

          ii.     No maintenance of vehicles may occur on any portion of the Facility that discharges stormwater to Elliott Bay.  Maintenance of vehicles includes, but is not limited to, changing lubricating, hydraulic and/or

transmission oil; topping off fluids, changing oil and/or fuel filters, grinding, sanding, welding, mechanical repairs, and/or painting.

iii. For the main passenger gangway system and cranes at the facility:

    1.  Drip collection pans or other effective containment devices must be placed under equipment that are subject to fluid leaks, including but not limited to areas where fluids are changed and topped off, fuel is added, and fuel tanks are exchanged;

    2.  Tarps or drop cloths must be placed under equipment being repaired if the equipment is immobile or emergency repairs must be made before it can be removed off-site; and

    3.  The contents of the containment devices, tarps and/or drop cloths must be collected after each procedure and disposed of in a manner consistent with federal, state and local laws.

**b.**    **Storage of Equipment:**

i. When parked or stored without covered protection from precipitation, drip collection pans or other containment devices are to be placed under any parts of mobile equipment that have petroleum-based materials exposed to precipitation and/or runoff. The containment devices must have sufficient depth and/or capacity to contain any precipitation that enters. The contents of the containment devices must be collected and disposed of in a manner consistent with federal, state, and local laws. These measures must be applied to the following equipment at a minimum:

    1.  Parts of the main passenger gangway, including but not limited to screw jacks and exposed drive and positioning mechanisms. Drip pans or other effective containment devices must be employed in both the cruise-season and off-season locations.

    2.  Parts of the cranes including but not limited to gearing and hydraulic oil lines/connections

    3.  Parts of the fork lifts including but not limited to greased components and hydraulic oil lines/connections.

**c.**    **Product Delivery and Waste Removal:**

i. At the pier, drip collection pans or other effective containment devices must be placed under all hose connections during fluid transfers to and

ORDER ENTERING CONSENT DECREE
PAGE - 3

from ships and at all hose connection points. The contents of the containment devices must be disposed in a manner consistent with federal, state, and local laws.

ii. All hoses used in fluid transfers must be inspected immediately before they are used to transfer fluids and any damaged or flawed hose sections replaced before any transfer. For oil and hazardous material transfers, a record of these inspections, observations made and replacements provided will be kept on the Declaration of Inspection Prior to Bulk Cargo Transfer required by the US Coast Guard under 33 CFR 156.

iii. The following fluid transfer operations at the Facility will be conducted as follows:

1. Lubricating oil deliveries to vessels: The measures in c. i. and ii will be used at each connection point at the delivery trucks, and booms will be installed around oil delivery truck tanks before transfers begin. Storm drains located within the area controlled by the land boom will be protected. The Port will have land boom, drain covers, and drip pans available for vendors.

2. Oily bilge water removal from vessels: The measures in c. i. and ii will be used at each connection point at the removal truck.

3. Sewage removal from vessels: The measures in c. i. and ii will be used at each connection point at any storage tank on the Pier or any removal trucks.

d. **Vessel Painting and Washing:**

i. Any washing and spraying of the outside of the vessels must be done with clean water.

ii. No spray painting or sand blasting of vessels will occur at the facility.

iii. No mixing of paint or tool cleaning related to vessel painting and washing will occur on portions of the cruise terminal facility that discharge stormwater to Elliot Bay.

iv. Tarps or drop cloths will be used as follows:

1. A tarp or drop cloth will be affixed under or on the floor of any manlift (i.e. cherry picker) basket when using a manlift located on the pier for any painting, paint preparation, finish application or

ORDER ENTERING CONSENT DECREE
PAGE - 4

washing occurs. The floor of the manlift will be inspected for any paint drips or spills and wiped before removing the tarp or drop cloth from beneath.

2. In addition to a tarp affixed under or on the floor of the manlift, it will be recommended to the vessel operators to exercise additional caution to prevent the discharge of paint drips and paint chips directly in to the water, and in so doing consider the design, installation and use of any drop cloth device attached to the vessel or extended from the manlift, to the extent they will not compromise the safety of the person operating the manlift or other employees working in the area.

3. Contents collected on the drop cloth must be disposed of promptly and in a manner consistent with federal, state, and local laws.

4. Upon completion of any exterior painting of vessels, the surface of the Pier in the vicinity of the painting activity will be inspected for paint drip and cleaned up as necessary.

5. These activities will be monitored to ensure that BMPs are properly implemented.

e. **Housekeeping:**

i. The cruise terminal facility Storm Water Pollution Prevention Plan will identify a pollution prevention team responsible for proper application of all BMPs.

ii. Prior to the beginning of each cruise season, all Port and operator employees and managing representatives of cruise-related vendors or contracted entities working on the Pier with BMP-related duties will be informed about the importance of best management practices at the facility. All employees assigned to perform any function related to BMP implementation must be instructed on how to perform those functions effectively.

iii. As a result of daily cruise operations, material tracked out of the Service Area onto the pier surface that is beyond the sanitary sewer collection area will be cleaned up at the end of the day's operation.

iv. At the start of each cruise season, a list of current BMPs specific to cruise terminal operations will be circulated to terminal operator, stevedore companies, all vessels, and all known vendors or on the first occasion that new vessels and vendors arrive at the Pier.

> v. When there are vessels at the cruise terminal facility, daily inspections must be conducted of all operations having the potential to contaminate stormwater and to ensure the BMPs are being applied to those operations. Corrections must be immediately made when any problems are found.
>
> vi. The Pier surface during the cruise season will be vacuum swept as follows: Every week or as deemed necessary a vacuum sweeper will be used to spot clean the high traffic areas, and a large mechanical vacuum sweeper-truck will be used once a month during cruise season as well as before and after the cruise season.

    **f.**    **Spill Prevention and Cleanup Program:**

> i. A spill prevention and clean-up program that is specific to the facility will be maintained and implemented.
>
> ii. Employees, representatives and contractors with BMP-associated Terminal duties must receive training on spill prevention and cleanup measures at the beginning of each cruise season.

9. The Port must provide Soundkeeper with a report twice a year documenting the implementation of the above BMPs on Pier 66. The report will include the following descriptions: (a) the Port's implementation of each BMP at Pier 66; (b) the entities involved in cruise-related activities who were informed about the BMPs by the Port; and (c) the Port's knowledge regarding the implementation of each BMP by these other entities. The report will identify the author. The Port will obtain information on the implementation of the BMPs to the extent it is reasonably practical from Port internal work orders and information it obtains from the cruise terminal facility operator. This list is not exhaustive or intended to limit the information the Port may provide in the reports.

10. As part of the consideration for this Consent Decree the Port and CTA will implement the BMPs set forth in Paragraph 8 for cruise-related activities at Pier 91, and provide the same reports identified in paragraph 9, above, as will be reflected in the separately enforceable Pier 91 Agreement.

ORDER ENTERING CONSENT DECREE
PAGE - 6

1    11.    Within ten (10) days following the entry of the Consent Decree, the Port shall pay

2 Two Hundred Fifty Thousand Dollars ($250,000) to Soundkeeper. The Port's payments shall be

3 in full and complete satisfaction of any claims Soundkeeper has or may have against the Port,

4 either legal or equitable, and of any kind of nature whatsoever, for fees, expenses, and costs

5 incurred in this litigation, or for civil penalties under the Clean Water Act. Soundkeeper may

6 allocate the payment as it deems appropriate.  The parties agree to have payment made by check

7 to the order of "Puget Soundkeeper Alliance c/o Smith and Lowney Trust Account" and

8 deposited in the Smith and Lowney Trust account.  The Port will mail the check to 2317 East

9 John Street Seattle, WA 98112, Attn. Knoll Lowney.

10    12.    Within ten (10) days of entry of this Consent Decree, CTA will pay Soundkeeper

11 Two Hundred Fifty Thousand Dollars ($250,000).  CTA's payment will be in full and complete

12 satisfaction of any claims Soundkeeper has or may have against CTA, either legal or equitable,

13 and of any kind of nature whatsoever, for fees, expenses, and costs incurred in this litigation, or

14 for civil penalties under the Clean Water Act. Soundkeeper may allocate the payment as it deems

15 appropriate.  The parties agree to have payment made by check to the order of "Puget

16 Soundkeeper Alliance c/o Smith and Lowney Trust Account" and deposited in the Smith and

17 Lowney Trust account.  CTA will mail the check to 2317 East John Street Seattle, WA 98112,

18 Attn. Knoll Lowney.

19    13.    In consideration of CTA's and the Port's obligations under this Consent Decree,

20 for the term of this Consent Decree, as defined in paragraph 17, below, Soundkeeper covenants

21 not to sue CTA, CTA's members, the Port, or any successor owner or operator of the Facility, or

22 associate with, or support financially or otherwise any other person to sue CTA, CTA's

23 members, or the Port for any of the discharges associated with the cruise-related activities at the

24 Facility that Soundkeeper alleged in its expert reports or pleadings should have necessitated

25 CTA, CTA's members, and/or the Port to obtain coverage for the Facility under Ecology's ISGP.

26

ORDER ENTERING CONSENT DECREE
PAGE - 7

14.     A force majeure event is any event outside the reasonable control of the Port that causes a delay in performing tasks required by this decree that cannot be cured by due diligence. Any delay in performance by the Port of a task required by this Consent Decree caused by a force majeure event is not a failure to comply with the terms of this decree, provided that the Port notifies Soundkeeper of the event; the steps that the Port will take to perform the task; the projected time that will be needed to complete the task; and the measures that have been taken or will be taken to prevent or minimize any impacts to stormwater quality resulting from delay in completing the task.

The Port will notify Soundkeeper of the occurrence of a force majeure event as soon as reasonably possible but, in any case, no later than fifteen days after the occurrence of the event. In such event, the time for performance of the task will be extended for a reasonable period of time following the force majeure event.

By way of example and not limitation, force majeure events include but are not limited to:

a.     Acts of God, war, insurrection, terrorism, or civil disturbance;

b.     Earthquakes, landslides, fire, floods;

c.     Actions or inactions of third parties over which defendant has no control;

d.     Unusually adverse weather conditions;

e.     Restraint by court order or order of public authority;

f.     Strikes or other labor disruptions;

g.     Any permit or other approval sought by the Port from a government authority to implement any of the actions required by this consent decree where such approval is not granted or is delayed, and where the Port has timely and in good faith sought the permit or approval; and

h.     Litigation, arbitration, or mediation that causes delay.

ORDER ENTERING CONSENT DECREE
PAGE - 8

1       15.    This Consent Decree takes effect on the date it is entered by the Court.  It

2  terminates 10 years after the date of entry unless good cause exists for earlier termination based

3  upon either a material change of cruise-related activities that are subject to the above BMPs, or a

4  material change in the water quality regulations regarding these activities. If either party believes

5  that there has been a material change in either the cruise-terminal activities or water quality

6  regulations, that party may ask the Court under its continuing jurisdiction to terminate the

7  Consent Decree on that basis.  Before applying to the Court for this determination, the parties

8  must first provide written notice to the other parties of the material change(s) alleged to have

9  occurred and then meet and attempt to resolve any dispute regarding the allegations and discuss

10  any suggested measures for resolving the dispute. A meeting should be held as soon as practical

11  after providing the written notice but must be held within 30 days after such notice, provided,

12  however, that if the party(ies) who opposes early termination fails to meet with the party who

13  proposes early termination within 30 days after such notice, the party(ies) who proposes early

14  termination may ask the Court to terminate the Consent Decree without further delay. Any notice

15  as required by this paragraph must be sent via first class mail to the party and to its counsel of

16  record.

17       16.    This Consent Decree may not be used as evidence in any proceeding or as an

18  admission or adjudication with respect to any allegations in the Complaint or any fact or

19  conclusion of law with respect to any matter alleged in or arising out of the Complaint.

20       17.    The Court retains jurisdiction over this matter.  While this decree remains in

21  force, this case may be reopened without filing fee so that the parties may apply to the Court for

22  any further order that may be necessary to construe, carry out, enforce compliance, and/or

23  resolve any dispute regarding the terms or conditions of the Consent Decree until termination of

24  the Consent Decree.  Before applying to the Court for relief, the parties must first attempt to

25  resolve any dispute regarding implementation of, or compliance with, this Consent Decree by: 1)

26  providing written notice to the other parties of the dispute; and 2) meeting to discuss the dispute

1   and any suggested measures for resolving the dispute.  Such a meeting should be held as soon as

2   practical but must be held within 30 days after notice of a request for such a meeting to the other

3   party and its counsel of record.  No application may be made to the Court until after the notice

4   and meeting required under this paragraph except that the party(ies) who provide notice of a

5   dispute may apply to the Court without further delay if the other party(ies) fail to meet within 30

6   days after notice of a request for meeting.  The prevailing or substantially prevailing party in any

7   proceedings to enforce the terms and conditions of this Consent Decree will be entitled to its

8   reasonable attorneys' fees and costs.

9        18.    The parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), no consent

10  judgment can be entered in a Clean Water Act suit to which the United States is not a party prior

11  to 45 days following the receipt of a copy of the proposed consent judgment by the U.S.

12  Attorney General and the Administrator of the U.S. EPA.  Therefore, upon the signing of this

13  Consent Decree by the parties, Soundkeeper will serve copies of it upon the Administrator of the

14  U.S. EPA and the Attorney General.

15       19.    The parties have participated in drafting this decree.  The terms of this Consent

16  Decree will be construed without regard to who drafted the various provisions and will be

17  construed as though both parties participated equally in the drafting.  Accordingly, any rule of

18  construction that a document is to be construed against the drafting party is not applicable to this

19  Consent Decree.

20       20.    This Consent Decree may be modified only upon the approval of the Court.

21       21.    If for any reason the Court declines to approve this Consent Decree in the form

22  presented, this Consent Decree is voidable at the discretion of any party.  The parties agree to

23  continue negotiations in good faith in an attempt to cure any objection raised by the Court to

24  entry of this Consent Decree.

25       22.    Notifications required by this Consent Decree must be in writing.  The sending

26  party may use any of the following methods of delivery: (1) personal delivery; (2) registered or

ORDER ENTERING CONSENT DECREE
PAGE - 10

1 certified mail, in each case return receipt requested and postage prepaid; (3) a nationally

2 recognized overnight courier, with all fees prepaid; or (4) e-mail.  For a notice or other

3 communication regarding this Consent Decree to be valid, it must be delivered to the receiving

4 party at the addresses listed below or to any other address designated by the receiving party in a

5 notice in accordance with this paragraph.

6 **If to Soundkeeper:**

7 Katelyn Kinn

8 Puget Soundkeeper Alliance
130 Nickerson Street, Suite 107

9 Seattle WA  98109
Email: katelyn@pugetsoundkeeper.org

10

11 and to:

12 Smith & Lowney PLLC
2317 East John St.

13 Seattle, WA  98112
Email: marcz@igc.org

14

15 **If to Port of Seattle:**

16 Thomas H. Tanaka
Port of Seattle

17 2711 Alaskan Way, Pier 69
PO Box 1209

18 Seattle, WA  98111-1209
Email: Tanaka.t@portseattle.org

19

20 and to:

21 Tom McDonald
Cascadia Law Group PLLC

22 606 Columbia St. NW, Suite 212
Olympia, WA  98501

23 Email:  tmcdonald@cascadialaw.com

24

25

26

ORDER ENTERING CONSENT DECREE
PAGE - 11

**If to CTA:**

Jean Cox
Cruise Terminals of America, LLC
2225 Alaska Way
Seattle, WA 98121
Email: jean.cox@seattlepier66.com

and to:

Dianne K. Conway
Gordon Thomas Honeywell LLP
1201 Pacific Ave., Suite 2100
Tacoma, WA  98407
Email:  dconway@gth-law.com

A notice or other communication regarding this Consent Decree is effective when received, unless the notice or other communication is received after 5:00 p.m., in which case the notice will be deemed received at 9:00 a.m. on the next business day.  A notice or other communication will be deemed to have been received:  (a) if it is delivered in person or sent by registered or certified mail or by nationally recognized overnight courier, upon receipt as indicated by the date on the signed receipt; or (b) if the receiving party rejects or otherwise refuses to accept it, or if it cannot be delivered because of a change in address for which no notice was given, then upon that rejection, refusal, or inability to deliver; or (c) for notice provided via e-mail, upon receipt of a response by the party providing notice or other communication regarding this Consent Decree.

DATED this 6th day of July 2016.


John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER ENTERING CONSENT DECREE
PAGE - 12

# ATTACHMENT B



SITE MAP

Total Terminals International, LLC - Terminal 46
Seattle, Washington

APPENDIX B

# ATTACHMENT C



WWW.ROSEFDN.ORG

201 4TH STREET, SUITE 102, OAKLAND, CA 94607
ROSE@ROSEFDN.ORG

**ROSE
FOUNDATION**
for COMMUNITIES
and the ENVIRONMENT

OFFICE: 510.658.0702
FAX: 510.658.0732

August 21, 2019

Thomas Swegle
Environment & Natural Resources Division
Law and Policy Section
P.O. Box 7415
Ben Franklin Station
Washington, D.C. 20044-7415

Re: Puget Soundkeeper Alliance v. Total Terminals International, LLC (Case No. 2:18-cv-00540-RSL)

Dear Mr. Swegle,

This letter is intended to provide assurance that I have received the draft Consent Decree between Puget Soundkeeper Alliance and Total Terminal International, LLC ("TTI") and that I am authorized by my Board of Directors to make the following binding commitments on behalf of the Rose Foundation.

1) I understand that the Rose Foundation should receive funds from TTC as specified in the Consent Decree.

2) The Rose Foundation shall prioritize the use of TTI funds for environmentally beneficial projects in Elliot Bay or within 50 miles of TTI's facility relating to water quality improvements. The funds shall be dispersed through the Rose Foundation's Puget Sound Stewardship & Mitigation Fund, a grantmaking fund which is wholly dedicated to supporting projects which benefit the water quality of Puget Sound.

3) Due to the disproportionate impact of pollution from facilities such TTI to low-income neighborhoods and communities of color, the Rose Foundation's policy is to prioritize projects from these neighborhoods in selecting grantees.

4) After the funds have been disbursed, the Rose Foundation shall send a report to the Justice Department, the Court and the Parties describing how the funds were utilized and demonstrating conformance with the nexus of the Consent Decree.

**Rose Foundation for Communities and the Environment**
The Rose Foundation is a 501(c)(3) public charity (tax ID#94-3179772). Its mission is to support grassroots initiatives to inspire community action to protect the environment, consumers and public health. To fulfill this mission, the Rose Foundation conducts the following activities:

- Raise money to award as grants to qualified non-profit organizations conducting charitable operations. The Rose Foundation does not support lobbying activities that are prohibited by

Section 501(c)(3) of the IRS Code, and no portion of the TTI funds shall be used to support any political lobbying activities whatsoever.

- Work directly in schools and in the community to encourage environmental stewardship and civic participation.

- Help government efforts to control pollution and protect the environment by encouraging community engagement in local, state and federal research and policy development.

Within this broad range of activities, all of the Rose Foundation's work revolves around one or more of the following strategic themes:

- Build and maintain a bridge between the community and organized philanthropy.

- Protect the natural environment, public health, and community and consumer rights.

- Promote collaboration between labor, environmental, business, consumer and social interests.

- Cultivate a new generation of environmental stewards and social policy leaders.

- Respect the inalienable rights protected by our nation's constitution, and the essential human rights to clean air, clean water, and individual dignity and privacy.

The Rose Foundation is governed by a Board of Directors. Grant applicants are required to submit written proposals, which must include at a minimum specific information about the goals, activities and projected outcomes of the proposed project, background about the charitable applicant, budget information, and a specific funding request. The Foundation may require additional information in order to fully evaluate the application. Applications are first screened by Foundation staff. Staff then makes recommendations to the Foundation Board for action. The Foundation requires all projects to submit written reports within one year of receipt of the grant award describing work conducted under the grant, thereby providing an accountability mechanism over funds awarded. Annual audits by the certified public accounting firm Maze and Associates are posted on the Foundation's website www.rosefdn.org.

I hope this provides you with the information you require. Please do not hesitate to contact me with any questions, or for additional information at (510) 658-0702 or tlittle@rosefdn.org.

Sincerely,

Tim Little, Executive Director

## SMITH & LOWNEY, P.L.L.C.

2317 East John Street
Seattle, Washington 98112
(206) 860-2883, Fax (206) 860-4187

September 11, 2019

Docket Clerk for the Honorable Robert L. Lasnik

Re:   *Puget Soundkeeper Alliance v. Total Terminals International, LLC et al.* - No.
2:18-cv-00540-RSL; Waiting period before entry of consent decree

Dear Docket Clerk:

This is submitted with the proposed Consent Decree and Joint Motion for Entry of Consent Decree for the above-captioned case.  Please note that, pursuant to the explicit direction of the Clean Water Act, the Consent Decree should not be entered by the Court until a 45-day Department of Justice and EPA review period has expired.  Thus, the hearing is noted accordingly.  Please do not have this Consent Decree entered before that time.  Please call if you have any question about this.  Thank you.

Sincerely,

SMITH & LOWNEY, P.L.L.C.

By: *s/Alyssa Englebrecht*
Alyssa Englebrecht, WSBA No. 46773
Attorney for Plaintiff